UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| Alexander Cortez-Debonar, et al.,<br><br>　　Plaintiffs<br><br>v.<br><br>Betsy Fretwell, et al.,<br><br>　　Defendants | **2:15-cv-00491-JAD-NJK**<br><br>**Order Granting in Part and Denying in Part Plaintiffs' Motion for Partial Summary Judgment and Denying Defendants' Motion for Summary Judgment**<br><br>[ECF Nos. 20, 22] |

　　Former firefighter trainees Alexander Cortez-Debonar and Cal Henrie, Jr., sue the City of Las Vegas, City Manager Betsy Fretwell, and Fire Chief Scott Fuller for a due-process violation and breach of contract to redress their 2013 termination from the City's firefighter academy.[1] Plaintiffs allege that they were fired after the City publicly accused them of cheating on an exam at the academy without giving them a pre-termination name-clearing opportunity, violating the Fourteenth Amendment's due-process clause and their union's collective-bargaining agreement ("CBA"). Plaintiffs move for partial summary judgment on liability, and defendants countermove for summary judgment on both claims. Because plaintiffs have shown that they were entitled to a name-clearing opportunity and whether the one they received is adequate is genuinely disputed, I grant in part and deny in part plaintiffs' motion, deny defendants' countermotion, and refer this case to the magistrate judge for a settlement conference.[2]

**Background**

　　Plaintiffs were firefighter recruits for Las Vegas Fire and Rescue from October 2012–February 2013.[3] During this time they were classified as probationary, non-confirmed

---

[1] ECF No. 1.

[2] I find these motions suitable for disposition without oral argument. L.R. 78-2.

[3] ECF No. 22-1 at 8; ECF No. 22-2 at 8.

employees of the City.[4] In January 2013, plaintiffs' recruitment class took the firefighter academy's hazardous material ("hazmat") exam.[5] In mid-February 2013, the City's Detention and Enforcement Department began to investigate the hazmat exam procedures. Investigators initially interviewed four recruits from plaintiffs' class and asked if (1) Fire Training Officer ("FTO") and exam proctor Jackson left the room during the exam and (2) if examinees communicated when Jackson was in the room and/or when he left.[6] Based on their answers, a full investigation was launched, and on February 13, 2013, the City publicly confirmed that the firefighter academy graduation ceremony scheduled for that month was being canceled due to cheating concerns.[7]

Investigators then interviewed the entire 14-member recruitment class individually; plaintiffs were interviewed on February 13th and again on February 25th.[8] The recruits gave conflicting answers about whether Jackson left the room and whether there was discussion during the exam.[9] On March 19, 2013, plaintiffs' recruitment class was informed that the entire group was "nonconfirmed" due to testing irregularities,[10] and the City's human resources department met with each recruit individually to have the recruits return equipment, sign separation documents, and receive their final paychecks.[11]

---

[4] ECF No. 22-1 at 8; ECF No. 22-2 at 8.

[5] ECF No. 22-1 at 7–8; ECF No. 22-2 at 9.

[6] ECF No. 24-1 at 9–11.

[7] ECF No. 24-1 at 11; ECF No. 20-1 at 23–29.

[8] ECF No. 22-1 at 9–12; ECF No. 22-2 at 13–14.

[9] ECF No. 24-1 at 11–15 (internal report summarizing February 13 and 14, 2014, interviews) (eight recruits including plaintiffs testified that they heard no communication during the exam, and six testified that they did hear communication during the exam; all denied cheating except for one recruit who initially stated that he got an answer from someone but later denied it).

[10] ECF No. 20-1 at 107.

[11] *Id.*

Plaintiff Henrie requested and received a third interview with investigators on May 8, 2013, during which investigators learned for the first time that the recruits took the exam as a "group exam" based on instructions from Jackson.[12] On July 10, 2013, at the request of the recruits, City Manager Fretwell met with the recruits and their counsel, the Training Cadre from the fire training center, at least one of the investigators, and a City attorney.[13] At this meeting, the recruits reiterated this new explanation for what transpired;[14] but the City still declined to reinstate them.

Plaintiffs filed a due-process claim under 42 U.S.C. § 1983 and a breach-of-contract claim under Nevada state law. They allege that their termination under suspicion of cheating without a prior name-clearing hearing deprived them of a constitutionally protected liberty interest in their names and reputations without due process of law and constituted a breach of the CBA, which required defendants to ensure that any discharge did not violate state or federal law.

Plaintiffs move for summary judgment on liability, arguing that it is undisputed that the recruits did not receive procedural due process in the form of a pre-termination name-clearing hearing as the Fourteenth Amendment's due-process clause and the CBA require.[15] Defendants oppose plaintiffs' motion for partial summary judgment and ask for complete summary judgment in their favor. They argue that plaintiffs' due-process claim fails because they were not entitled to a name-clearing hearing; even if they were, their July 2013 post-termination meeting with City Manager Fretwell afforded them constitutionally adequate process. Defendants also contend that plaintiffs' breach-of-contract claim fails because these probationary employees are exempt from the CBA's guaranty that termination must be lawful.[16]

I find that the undisputed evidence establishes that plaintiffs were stigmatized and entitled to a post-termination name-clearing opportunity. But the record is too underdeveloped for me to

---

[12] ECF No. 22-2 at 17.

[13] ECF No. 22-3.

[14] ECF No. 22-2 at 26.

[15] *See* ECF No. 20.

[16] *See* ECF No. 22.

determine whether the July 10, 2013, meeting with Fretwell qualifies as that opportunity as a matter of law.  I also disagree with defendants' interpretation of the CBA.  Accordingly, I grant the plaintiffs' motion in part and deny it in part, the net effect being that the stigmatization is established as a matter of law.  This leaves for trial the question of whether the July 10, 2013, meeting satisfied due process, the breach-of-contract claim, and damages.

## Discussion

### A.    Summary-judgment standards

Summary judgment is appropriate when the pleadings and admissible evidence "show there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."[17]  When considering summary judgment, the court views all facts and draws all inferences in the light most favorable to the nonmoving party.[18]  If reasonable minds could differ on the material facts, summary judgment is inappropriate because its purpose is to avoid unnecessary trials when the facts are undisputed, and the case must then proceed to the trier of fact.[19]

If the moving party satisfies FRCP 56 by demonstrating the absence of any genuine issue of material fact, the burden shifts to the party resisting summary judgment to "set forth specific facts showing that there is a genuine issue for trial."[20]  The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts"; he "must produce specific evidence, through affidavits or admissible discovery material, to show that" there is a sufficient evidentiary basis on which a reasonable fact finder could find in his favor.[21]  The court only

---

[17] *See Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986) (citing FED. R. CIV. P. 56(c)).

[18] *Kaiser Cement Corp. v. Fishbach & Moore, Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986).

[19] *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995); *see also Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994).

[20] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986); *Celotex*, 477 U.S. at 323.

[21] *Bank of Am. v. Orr*, 285 F.3d 764, 783 (9th Cir. 2002) (internal citations omitted); *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991); *Anderson,* 477 U.S. at 248–49.

considers properly authenticated, admissible evidence in deciding a motion for summary judgment.[22]

**B.   Stigmatization claim under 42 U.S.C. § 1983**

Section 1983 "is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred."[23] To state a claim under § 1983, a plaintiff must allege that a person acting under color of state law violated a right secured to plaintiff by the Constitution or the laws of the United States.[24]

"[A] terminated [public] employee has a constitutionally based liberty interest in clearing his name when stigmatizing information regarding the reasons for his termination is publicly disclosed."[25] To trigger due-process protections, the plaintiff must show that "(1) the accuracy of the charge is contested, (2) there is some public disclosure of the charge, and (3) it is made in connection with the termination of employment . . . ."[26] If these elements are met, the plaintiff must have an opportunity to refute the charge and clear his name "at a meaningful time and in a meaningful manner."[27]

### *1.   That plaintiffs were stigmatized and entitled to a name-clearing opportunity is not genuinely disputed.*

Neither party disputes that the City publicly disclosed that the 2013 class would not be graduating due to suspicions of cheating or that the cheating charge was made in connection with plaintiffs' termination. The only contested stigmatization element is whether the cheating allegation was actually contested. Defendants argue that they are entitled to summary judgment because the cheating charge is true and plaintiffs admitted that they lied during the investigation. Plaintiffs, on the other hand, contend that they are entitled to summary judgment on the issue of liability because

---

[22] FED. R. CIV. P. 56(c); *Orr*, 285 F.3d at 773–74.

[23] *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (internal citations and quotations omitted).

[24] *West v. Atkins*, 487 U.S. 42, 48–49 (1988).

[25] *Cox v. Roskelley*, 359 F.3d 1105, 1110 (9th Cir. 2004).

[26] *Llamas v. Butte Cmty Coll. Dist.*, 238 F.3d 1123, 1129 (9th Cir. 2001).

[27] *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965).

they have always contested the accuracy of the charge.

The record is clear that plaintiffs have always disputed the cheating charge. In their initial interviews with investigators on February 13, 2013, both plaintiffs denied cheating and indicated that they did not hear any communication during the exam.[28] Plaintiffs continue to deny cheating, albeit for different reasons.

Defendants argue that, although the plaintiffs may have said they were contesting the accuracy of the cheating charge, they knew the charge was valid.[29] Defendants cite to deposition testimony to illustrate this insincerity.[30] I do not find that the deposition testimony supports this argument. I therefore find that plaintiffs have met their burden to show that they actually contested the cheating allegations and were thus entitled to a name-clearing opportunity.

### 2. Only a post-termination opportunity was required.

As plaintiffs were stigmatized by the City's termination rationalization and were entitled to a name-clearing opportunity, I turn to the question of whether they received it. Plaintiffs contend that due process required that opportunity to be given *before* the termination. Defendants argue that a post-termination hearing was all that was constitutionally required, and the July 10, 2013, hearing satisfied that requirement.

Plaintiffs were not entitled to a pre-termination hearing.[31] It is undisputed that plaintiffs were probationary-status employees,[32] and they concede that they had no property interest in their

---

[28] ECF No. 24-1 at 12–13.

[29] ECF No. 22 at 9, 11–12.

[30] ECF No. 22-2 at 15.

[31] ECF No. 20 at 5; ECF No. 23 at 7.

[32] ECF No. 22-1 at 8; ECF No. 22-2 at 8. "Employees in Nevada are presumed to be employed 'at-will' unless the employee can prove facts legally sufficient to show a contrary agreement was in effect." *Dillard Dep't Stores, Inc. v. Beckwith*, 989 P.2d 882, 884 (Nev. 1999) (citing *Vancheri v. GNLV Corp.*, 777 P.2d 366, 368 (Nev. 1989)). And the CBA gave the City the right to discharge these probationary employees "at any time, as long as the" termination was "consistent with applicable state and federal law." ECF No. 20-1 at 19.

1  continued employment with the City.[33]  All of the cases that plaintiffs cite for the proposition that a
2  pre-termination hearing is always required are distinguishable because, in each of those cases, the
3  public employee had a protected property interest in continued employment and was not merely an
4  at-will employee.[34]  A name-clearing hearing in the case of an at-will employee "is solely to provide
5  the person an opportunity to clear his name,"[35] not to prevent discharge.  Courts have thus
6  consistently held that a post-termination hearing satisfies due process for at-will employees.[36]  The
7  salient question, then, is whether the July 10, 2013, post-deprivation meeting with City Manager
8  Fretwell gave plaintiffs a constitutionally sufficient opportunity to clear their names.

### 3. Whether the July 10th meeting satisfied due process cannot be determined on this record.

At a minimum, due process requires notice and a hearing in which an individual has a meaningful opportunity to confront the evidence against him in front of a decisionmaker who is familiar with the facts.[37]  To determine what process is due in a particular case, courts apply the three-part balancing test set forth by the United States Supreme Court in *Mathews v. Eldridge*[38] that

---

[33] ECF No. 20 at 4 (Plaintiffs' motion for summary judgment) (stating that "while Plaintiffs were probationary employees and therefore did not have a protectable property interest in their jobs. . . , they still had a liberty interest in their reputation.").

[34] *Finkelstein v. Bergna*, 924 F.2d 1449 (9th Cir. 1991); *Vanelli v. Reynolds School District*, 667 F.2d 773 (9th Cir. 1982); *Walls v. Central Contra Costa Transit Auth.*, 653 F.3d 963 (9th Cir. 2011) (all involving a public employee who had a protected property interest in continued employment and was not merely an at-will employee).

[35] *Codd*, 429 U.S. at 627.

[36] *Eklund v. City of Seattle Mun. Court*, 628 F.3d 473, 484 n.1 (9th Cir. 2010) (citing *Board of Regents v. Roth*, 408 U.S. 564 (1972), and noting, "Because Eklund was an at-will employee, he was entitled only to a name-clearing hearing, not to a pre-termination hearing concerning the discharge itself."); *Standley v. Elko Cty.*, 346 F. App'x 214, 215 (9th Cir. 2009) (Nevada at-will public employee did not have property right to pre-termination hearing); *Clements v. Airport Auth. of Washoe Cty.*, 69 F.3d 321, 331 (9th Cir. 1995) ("the court's determination that Douglas was an at-will employee negates the existence of a property interest in his employment.").

[37] *Vanelli*, 667 F.2d at 780 (internal citations omitted).

[38] *Mathews v. Eldridge*, 424 U.S. 319 (1976).

considers (1) the private interest that will be affected, (2) the risk of an erroneous deprivation of that interest through the procedures used, and (3) the fiscal and administrative burdens that any additional procedural requirements would entail.[39]  Thus, although a hearing is always required, "when the hearing must be held and what procedural protections must be given at the hearing are determined on a case-by-case basis."[40]

      I cannot decide based on the thin record before me whether the July 10th meeting met the standards of fairness required by the due-process clause.  Defendants rely on a letter City Manager Fretwell sent to plaintiffs' counsel summarizing what happened at that meeting.[41]  The letter recounts that the recruits were represented by counsel; each was given an opportunity to refute the charges by providing an explanation of what occurred in the exam room and why; and that, although she ultimately was not persuaded, decisionmaker Fretwell meaningfully considered their presentations.[42]  But I decline to consider this letter because the statements in it are inadmissible hearsay.[43]  I also decline to consider City Manager Fretwell's testimony from the hearing in front of the employee-management relations board describing what occurred at the July meeting because the transcript is not properly authenticated.[44]  I am thus left with only the sparse details that plaintiffs provided in their deposition testimony to determine whether the procedures afforded at the meeting were sufficient.[45]  On this record, I cannot determine whether the July 2013 meeting qualified as the name-

---

[39] *Id.* at 335.

[40] *Brady v. Gebbie*, 859 F.2d 1543, 1554 (9th Cir. 1988).

[41] ECF No. 22-3.

[42] *Id.  Compare with Brady,* 859 F.2d at 1554 (finding that due process was not satisfied where decisionmaker had made up her mind before the meeting and thus likely disregarded any evidence presented).

[43] FED. R. CIV. P. 56(c); *Orr*, 285 F.3d at 773–74.

[44] ECF No. 25-1 (missing signed reporter's certificate); *Orr*, 285 F.3d at 776 (certified copy of testimony required for summary judgment).

[45] I find that FRE 408 does not require exclusion of plaintiffs' deposition testimony describing their meeting with City Manager Fretwell, which they characterize as a "settlement conference."  There is

clearing opportunity plaintiffs were entitled to. Accordingly, neither party is entitled to summary judgment on plaintiffs' § 1983 claim.

### C.     Neither party is entitled to summary judgment on plaintiffs' breach-of-contract claim.

Article 10, paragraph B of the City's CBA with the International Association of Fire Fighters establishes grievance procedures for certain employee claims and disputes.[46] Paragraph B of that Article makes it clear that these grievance procedures do not apply to probationary employees.[47] That paragraph further states that "the City has the right to discipline or discharge a[ probationary] employee at any time, as long as the action is consistent with applicable state and federal law. Nothing in this Agreement interferes in any way with the City's right to discharge or discipline any employee prior to the successful completion of an initial probationary period."[48] In their second claim for relief, the plaintiffs allege that, by firing plaintiffs without due process, the City also breached this CBA provision[49] because it "required" the City "to ensure that any discipline or discharge, which was imposed upon the Plaintiffs was consistent with applicable state and federal law."[50]

---

no evidence that this meeting was in fact a settlement conference; regardless, the rule narrowly precludes evidence of compromise offers and negotiations "either to prove or disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement or a contradiction." FED. R. EVID. 408. I find that statements about what occurred during the July meeting show what types of procedures plaintiffs were provided and are not barred by FRE 408.

[46] ECF No. 20-1 at 19.

[47] *Id*. at Art. 10, ¶ B.

[48] *Id*.

[49] ECF No. 1 at ¶¶ 23–25.

[50] ECF No. 23 at 7.

Defendants move for summary judgment on this claim, arguing[51] that the sentence that exempts probationary employees from the grievance procedures "prohibits Plaintiffs from" bringing their breach-of-contract claim.[52] Although defendants' reasoning is not well developed, it appears that they are arguing that, by exempting probationary employees from the grievance procedures in paragraph A, the CBA must also exempt probationary employees from all provisions under Article 10 including paragraph B—the paragraph that establishes the procedures that apply to probationary employees. Defendants' interpretation is inconsistent with a plain reading of Article 10 as a whole, and I reject it. Defendants have not demonstrated that they are entitled to summary judgment on plaintiffs' breach of contract claim.[53]

## Conclusion

Accordingly IT IS HEREBY ORDERED, ADJUDGED, and DECREED that **plaintiffs' motion for partial summary judgment [ECF No. 20] is GRANTED in part and DENIED in part as stated in the body of this order; defendants' motion for summary judgment [ECF No. 22] is DENIED.**

IT IS FURTHER ORDERED that this case is referred to the magistrate judge for a settlement conference.

Dated this 1st day of August, 2016.

_____
Jennifer A. Dorsey
United States District Judge

---

[51] Defendants argue alternatively that, if I find that the plaintiffs' claims were subject to the grievance procedures in paragraph A, this lawsuit is premature because the plaintiffs did not exhaust those procedures. ECF No. 22 at 14. It is clear to me that plaintiffs' claims were not subject to the CBA's grievance procedures, so I do not further consider the exhaustion argument.

[52] ECF No. 22 at 13.

[53] Defendants do not argue, so I do not consider, whether the CBA can be interpreted to create an express contractual right to a violation-free termination such that a due-process violation in the termination process also gives rise to a breach-of-contract claim.